## J. D. BROOKSHIER, Trustee, etc., Respondent, v. CHILLICOTHE TOWN MUTUAL FIRE INSURANCE COMPANY, Appellant.

### Kansas City Court of Appeals, January 20, 1902.

1. **Trial and Appellate Practice:** UNSIGNED MOTION FOR NEW TRIAL: OBJECTION. While motions are required to be signed by a party or his attorney, where a motion for new trial is not so signed objection should be made thereto in the trial court, or it will not be considered in the appellate court.

2. **Insurance:** TOWN MUTUAL COMPANY: DEMAND FOR ASSESSMENT: PLEADING: PETITION. Where a policy for insurance issued by a town mutual company provides that the indemnity shall be paid ninety days after notice and proof, a petition thereon need not allege a demand of the company to lay an assessment and its refusal, or that the amount had been laid and a refusal to pay or there were assets on hand out of which payment could be made.

3. ———: ASSIGNMENT OF POLICY: ASSIGNEE'S RIGHT TO SUE. The assignment statute does not abridge a debtor's common-law right to sell, deliver, mortgage or pledge the whole or a part of his property for the benefit of one or more of his creditors; and an assignee of an insurance policy, with power to collect the same and distribute the proceeds among certain creditors of the assignor, may sue on such policy and such assignment will not have the effect of a general assignment for the benefit of creditors, unless it appear that it was so intended.

4. **Trial Practice:** ISSUES: INSTRUCTIONS: EVIDENCE. Instructions must be restricted within the limits of the issues made by the pleadings.

5. **Insurance:** IRON-SAFE CLAUSE: BOOKS AND PAPERS: EVIDENCE. On the night of the fire, the safe in plaintiff's storehouse was blown and his books and inventories burned. *Held*, in a suit to recover the insurance on his stock of goods he was not compelled

to produce the books and inventories required in the iron-safe clause of the policy, and may prove the value of the stock consumed by parol evidence.

Appeal from Livingston Circuit Court.—*Hon. E. J. Broaddus,* Judge.

AFFIRMED.

*John M. Voris* and *Davis & Sons* for appellant.

(1)   To entitle plaintiff to a money judgment, it is necessary to allege that plaintiff demanded of defendant company to lay an assessment and that defendant company refused, or·that assessment had been levied and defendant refused to pay over the same or that the money was on hand and defendant refused to pay.   For want of such allegation plaintiff did not state a cause of action.   Taylor v. Nat. Temp. Relief Union, 94 Mo. 35; Bailey v. Mutual Benefit Ass'n, 71 Ia. 490; Burdon v. Mass. Safety Fund Ass'n, 1 L. R. A. 146; Lawler v. Murphy et al., 8 L. R. A. 113; Bentz v. Northwestern Aid Ass'n, 2 L. R. A. 784; Jackson v. Northwest Mutual, 2 L. R. A. 786; Darrow v. Family Fund Society, 6 L. R. A. 495.   (2)   The petition alleges that after the fire Collins & Tharp assigned the policy to plaintiff as trustee to collect and distribute the loss thereunder, to the creditors of Collins & Tharp.   The assignment is in writing set out in full in the answer of defendant, and admitted by plaintiff.   We contend, that this is a general assignment for the benefit of creditors; that under our statutes it is necessary for the plaintiff to qualify by filing bond, before he has any capacity to sue.   R. S. 1889, chap. 8, p. 197; Douglass v. Cissna, 17 Mo. App. 44; Rendlemann v. Willard, 15 Mo. App. 375; Seymour v. Newman, 77 Mo. App. 578.   (3)   At the time of the assignment, there was no cause of action to assign, because no proof of loss had been presented, which was a condition prece-

dent. Until proof is presented there is no debt. Lumber Co. v. Ins. Co., 30 L. R. A. 689, p. 3, at p. 692; Sims v. Ins. Co., 47 Mo. 54; Ayers v. Ins. Co., 17 Iowa 176. (4) No authority is given to plaintiff to sue, the words of the instrument is "To collect and distribute the loss thereunder to the creditors." An assignment of a cause of action, so the assignee may sue, the entire cause must pass to the assignee as his property. Michael et al. v. Ins. Co., 17 Mo. App. 23; Cable v. St. L. Marine & Dock Co., 21 Mo. 135. (5) Iron-safe clause was a condition precedent, and a warranty. Crigler v. Ins. Co., 49 Mo. App. 11. The burden to show compliance is on plaintiff. Sweeney v. Ins. Co., 38 L. R. A. 297. In the case at bar, defendant set up the condition as to keeping set of books; it was clearly upon defendant to show performance of this condition. (6) The instruction asked by defendant on the iron-safe clause, should have been given. The plaintiff does not show he has complied with the conditions of the contract on his part.

*Sheetz & Sons* and *Lewis A. Chapman* for respondent.

(1) If there was either a motion for a new trial or a motion in arrest of judgment, it is not copied in the record or furnished in the appellant's abstract of the record. "Every petition or other pleading or motion shall be signed by the party or his attorney." A motion for a new trial must be incorporated bodily in bill of exceptions. The whole motion must be set out. R. S. 1899, sec. 619; Benoist v. Powell, 7 Mo. 224; Robinson v. Hood, 67 Mo. 660; State v. Sweeny, 68 Mo. 96. (2) If the motion is not made part of the record by being incorporated in the bill of exceptions, the appellate court can not look at it for any purpose at all. A mere reference to the motion is not sufficient. Bank v. Finks, 40 Mo. App. 367; Sanderson v. Mertz, 44 Mo. App. 496; Wilson v. Scott, 50 Mo. App. 329; Story v. Ragsdale, 30 Mo.

App. 196; McNeil v. Ins. Co., 30 Mo. App. 306; Puller v.
Thomas, 36 Mo. App. 105; Collins v. Barding, 65 Mo. 496.
(3) Appellant claims that respondent should have alleged
and proven a demand on appellant to lay an assessment and
a refusal by appellant or allege and prove that assessment had
been levied and a refusal to pay or that assets were on hand;
and to maintain this point, cites a number of cases none of
which have any application to this case. These cases cited
all have reference to benefit societies and not a single one of
them to mutual assessment companies. (4) "When a deed of
conveyance in trust is made to a trustee to pay certain de-
scribed debts from the proceeds of property conveyed, and
to repay to the grantor any surplus, the deed will be treated as
a security, and not as a voluntary assignment. Mfg. Co. v.
Woodson, 130 Mo. 119; Calihan v. Powers, 133 Mo. 497;
Jaffrey v. Mathews, 120 Mo. 317; Hargardine v. Henderson,
97 Mo. 375; Haase v. Distilling Co., 64 Mo. App. 135.

SMITH, P. J.—The defendant, a mutual fire insurance
company organized under the statutes of this State (Session
Acts 1895, page 200), in consideration of a premium of forty-
six dollars, issued to Collins & Tharp, a mercantile partner-
ship, a policy of fire insurance against all loss or damage, not
exceeding two thousand five hundred dollars, on their stock
of merchandise. During the life of the said policy, the stock
of merchandise so covered by it was entirely destroyed by fire.
After the fire occurred, Collins & Tharp assigned the said
policy to the plaintiff, as trustee for certain creditors of the
partnership, specified in the assignment. There is no question
raised either as to the notice of the fire or the proofs of loss.
The defendant failing to pay the loss, this suit was brought on
the policy; and which resulted in judgment for plaintiff. De-
fendants appealed.

I.    The motion for a new trial was embodied in the bill
of exceptions and though it specified the several errors be-

lieved to have been committed by the court during the progress of the trial, and to which an exception had been saved, it was neither signed by the defendant nor its attorney. The plaintiff contends that since said motion was not signed as required by section 619, Revised Statutes, it was no motion at all, and that the bill of exceptions has, therefore, brought nothing before us for review. It is doubtless true that if the plaintiff had objected in the court below, as he did not, to the motion because unsigned, that the defendant would have been afforded an opportunity to have signed it; and that in case of a failure to do so such motion would have been stricken from the files. But as the motion, except as to the signing, was well enough, the plaintiff's objection made here for the first time must be disregarded.

II. The defendant assails the sufficiency of the petition on the ground that it is not therein alleged that the plaintiff made a demand on it to lay an assessment and that there was a refusal by it to do so; or, that an amount had been laid, and a refusal to pay; or, that assets were on hand out of which payment could be made. And in support of this objection, cites Taylor v. Union, 94 Mo. 35. But it will be seen from an examination of that case that the contract there is quite different from that here, for there, as appears from the indemnity certificate, the society "agreed *to make an assessment on all its members who held indemnity certificates subject to assessments, and to pay the amount collected for mortuary purposes* not exceeding the one thousand dollars"— the amount named in the indemnity certificate sued on. While here, the policy discloses that the plaintiff agreed that the amount of the loss for which the defendant should be found liable on its said policy should be *payable ninety days after due notice, ascertainment and satisfactory proof of loss.* It is thus seen that in one case it was agreed that, in the event of loss an assessment should be levied and the amount collected thereon paid over to the beneficiary; while in the other,

the insurer agreed that if there was a loss, a specific sum should be paid to the insured ninety days after notice and proof of such loss. Here was a direct promise to pay a definite sum of money on the happening of a certain event. The cases are therefore clearly distinguishable, the one from the other.

While it is true that the defendant, under its charter (the Act of March 21, 1895, previously cited) and by-laws, was given the power to raise by assessment a fund to pay losses occurring to its members, yet we do not think the plaintiff was required, as a condition precedent to his right of recovery, to allege and prove a demand and refusal to exercise this power, or that there were funds on hand out of which plaintiff's loss could be paid; because, under the contract of insurance entered into between the parties, the defendant unconditionally agreed to pay any loss the insured might sustain not to exceed two thousand five hundred dollars. And whether the defendant raised the amount which it agreed to pay by assessment, or paid it out of any surplus, or other fund on hand, was a matter which concerned it rather than the insured. We are unable to see anything in the defendant's charter, by-laws, or in the policy, or the authorities referred to by it, that upholds its objection to the sufficiency of the petition.

III. The defendant further objects that the plaintiff was without capacity to sue. It appears, as has been already stated, that Collins & Tharp, a few days after the loss, made a written assignment of the policy to the plaintiff in trust for certain creditors therein named. It was provided in the assignment that the said trustee should collect the indemnity to which the assignors were entitled under the policy, and distribute the same pro rata among said creditors, the assignors retaining the right to pass upon the bona fides of each claim referred to in the assignment. The defendant insists that the assignment thus made was a general assignment

under the statute, and that since the trustee therein—the plaintiff—had not qualified by giving bond, he had no capacity to sue.

It nowhere appears in the record that the firm of Collins & Tharp were insolvent or that they had no other property than that assigned to plaintiff. But on the contrary, it may be inferred from certain facts shown in the record that they owned other assets. It does not distinctly appear that the assignors intended that the said assignment should operate as a general assignment, under the statute. The statute was not intended to abolish or abridge a debtor's common-law right, whether solvent or insolvent, in good faith to sell, deliver in payment, mortgage or pledge the whole or any part of his property for the benefit of any one or more of his creditors. Such being the law, it is immaterial whether this be accomplished by a direct transfer of property to the creditor, or by its transfer to a trustee for the creditor. Haase v. Distilling Co., 64 Mo. App. 135; Hargardine v. Henderson, 97 Mo. 375; Jaffrey v. Matthews, 120 Mo. 317; Mfg. Co. v. Woodson, 130 Mo. 119. We must therefore conclude that the assignment in question was not a voluntary assignment under the statute.

IV. The defendant complains of the action of the trial court in refusing to instruct the jury to the effect that the assignment of Collins & Tharp was made before proofs of loss were filed with it, and that therefore no title vested in plaintiff. This instruction was properly refused because it was outside the limit of the issues made by the pleadings. No such defense was pleaded by the answer. The rule of practice in this State is well settled to the effect that the instructions in a case must be restricted within the limits of the issues made by the pleadings. Wright v. Fonda, 44 Mo. App. 634, and the cases there cited.

V. There was a clause in the policy requiring the assured to keep a set of books showing a complete record of

the business transacted, including purchases and sales, both credit and cash and to keep such books and inventory securely locked at night in a fireproof safe, etc.; and in case of loss to produce such books and inventories, and in the event of such failure to produce, then the policy to be void, etc. The answer pleaded a non-performance of the said condition of the policy. The undisputed evidence showed that Collins & Tharp had in their store a fireproof safe in which they kept their books of account. It further appeared that on the night of the fire—this safe was burglarized—a hole was drilled into it, and it was then blown open. In consequence of which, all of the books and papers therein, except a ledger which was not entirely burned, were destroyed in the conflagration. It appears that the defendant demanded the production of the books that were in the said safe. The plaintiff was able to produce only the ledger, which was in the condition already stated. He could not therefore produce the books and invoices to prove the kind and value of the goods on hand at the time of the fire. He was permitted, over the objections of the defendant, to prove the same by oral evidence.

We think this was proper. The books and inventories which were burned without any fault of the plaintiff or his assignors, could not be produced. The law does not require impossible things. The excuse for the non-production of the books was sufficient, and this seems to be conceded by the defendant. It insists, however, that the plaintiff should have not only shown the loss of the books and inventories, but that the safe had been kept in the manner required by said "iron-safe clause" of the policy. The object of this clause in the policy was no doubt to enable the defendant to arrive more accurately than it otherwise would, at the exact amount of the loss. A substantial compliance with the requirement of the clause was shown. We see no reason why it may not be inferred that the books and inventories shown to have been destroyed did not contain the entries required by the

said clause. The evidence of value received was the best evidence in existence, and was proper enough. There was really no dispute but what the value of the goods was at least three times the amount of the policy. The integrity of the loss is not questioned, and no good reason is seen why the defendant should not pay the indemnity provided in the policy. Although a careful and painstaking examination of the entire record has been made, no error prejudicial to the defendant on the merits has been discovered, and it results, therefore, that the judgment must be affirmed. All concur.